UNITED STATES DISTRICT COURT`
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SAFE HARBOR POLLUTION                    17 Civ. 2360
INSURANCE,

                Plaintiff,
                                              **COMPLAINT**

    -against-

CHALICO CONCRETE MATERIALS, INC.

                Defendant.
-----------------------------------------------------------X

        Plaintiff, Safe Harbor Pollution Insurance ("Safe Harbor"), by its attorneys, Nicoletti Hornig & Sweeney, as and for a Complaint against the defendant Chalico Concrete Materials, Inc. ("Chalico"), alleges upon information and belief as follows:

## JURISDICTION

        1.    This action is filed under and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201.

        2.    The following issues constitute questions of insurance coverage under an Admiralty or Maritime contract of insurance and thereby come within the Admiralty and Maritime jurisdiction of the United States District Court, pursuant to Title 28 U.S.C. §1333 et seq., and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the Admiralty and Maritime jurisdiction of the United States and of this Honorable Court.

        3.    An actual controversy of a justiciable nature exists between plaintiff and defendant involving the rights and obligations under a marine contract of insurance and depending on the construction of said contract, the aforesaid controversy can be determined by a judgment of this Court, without further suit.

4. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on the diversity of citizenship of the parties and the amount in controversy with respect to Chalico's claim.

## PARTIES

5. At all times relevant, Safe Harbor, was and is an insurance company duly organized under and existing by virtue of the laws of the State of Rhode Island with a principal place of business at 5550 Merrick Road, Massapequa, New York 11758.

6. Upon information and belief and at all relevant times, Chalico is a Texas corporation with an office and place of business at 24902 FM 1846, Rio Hondo, Texas.

7. Upon information and belief and at all relevant times, the M/V LIBRA is a 61.5 foot push boat owned and operated by Chalico bearing Official Number of 647864.

## THE POLLUTION POLICY

8. Safe Harbor issued Policy No. V-14034-15 to Chalico which provided, among other things, pollution liability insurance for the M/V LIBRA, subject to the policy's terms and conditions, with a policy period from September 15, 2015, 12:00 a.m. to September 15, 2016, 12:01 a.m. (the "Policy"). A true and complete copy of the Policy is attached hereto as Exhibit "A"; and the terms and conditions of which are fully incorporated herein.

## BACKGROUND FACTS REGARDING CLAIM

9. On or about September 19, 2015, the M/V LIBRA left Port of Harlingen, Texas pushing a 300 foot barge en-route to Victoria, Texas. During this voyage one of the vessel's engines malfunctioned. The vessel was re-routed to Port Aransas, Texas for repairs.

10. While the vessel was undergoing repairs, the vessel started to take on water in the No. 3 and 4 starboard wing tanks caused by wastage in the hull plating. The Captain

decided to repair these holes with a patch. The vessel then proceeded to Victoria, Texas where 3,008 metric tons of concrete sand was loaded into the barge.

11. After loading, the vessel proceeded to Port Harlingen, Texas. Unloading of the barge began upon its arrival at Port Harlingen, Texas and lasted for a period of 2 weeks.

12. At approximately 6:20 a.m. on October 17, 2015, at a time when the unloading of the barge was still ongoing, the night watchman noticed that the vessel was leaning to starboard. Upon inspection, water was observed in the Nos. 3 and 4 starboard wing tanks. Efforts to pump out the water were unsuccessful and the vessel ultimately sank.

13. Weather was not a factor in the loss.

14. At all times immediately prior to the discovery of the ingress of water into the M/V LIBRA and throughout the time of her sinking, the vessel was docked and the weather and sea conditions were calm.

15. It was subsequently determined that the M/V LIBRA sank because of hull plate wastage and/or corrosion which allowed water to penetrate through the Nos. 3 and 4 starboard wing tanks.

## THE CLAIM

16. As a result of the sinking of the M/V LIBRA, Chalico allegedly retained Chemical Response & Remediation Contractors, Inc. ("CRRC") on or about October 17, 2015 to respond to the sinking of the M/V LIBRA. Upon information and belief, CRRC worked on the M/V LIBRA project from October 17, 2015 to November 20, 2015 and submitted two invoices to Chalico – one dated November 13, 2015 for $50,776.88 and the other dated December 3, 2015 for $44,407.50 (collectively the "CRRC invoices").

17. Upon information and belief, Chalico did not pay CRRC and the full invoiced balances remain outstanding to date.

18. On or about February 5, 2016, Chalico provided first notice of the sinking of the M/V LIBRA to Safe Harbor and sought coverage under the Policy for the CRRC invoices.

19. After completing its investigation, Safe Harbor denied the claim by letter dated November 13, 2016.

20. On or about December 19, 2016, CRRC filed suit in the District Court, Cameron County – 445th District Court in Texas against Chalico for the full balance of $95,184.38 which allegedly remains due and outstanding on CRRC invoices.

21. By letter dated March 21, 2017, Chalico tendered CRRC's lawsuit to Safe Harbor and demanded that Safe Harbor defend Chalico.

22. By this action, Safe Harbor declines the tender and demand for a defense based on the presently known facts and law for the reasons stated herein.

## AS AND FOR A FIRST CAUSE OF ACTION

23. Safe Harbor repeats and realleges each and every allegation set forth in paragraphs "1" through "21" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

24. The M/V LIBRA sank in calm weather and sea conditions.

25. Under the law, when a vessel sinks in calm weather, a presumption exists that the vessel was unseaworthy and that the cause of the sinking was the unseaworthiness of the vessel.

26. It has also been determined that the M/V LIBRA sank because of hull plate wastage and/or corrosion which allowed water to penetrate through the Nos. 3 and 4 starboard wing tanks.

27. Therefore the M/V LIBRA was unseaworthy at the time she sank and her sinking was the result of such unseaworthiness.

28. The Policy provides in relevant part:

## CHAPTER 1

## GENERAL TERMS, CONDITIONS and LIMITATIONS

\*\*\*

(b) The Insured's breach of any warranty, express or implied, contained in this Policy shall immediately void this Policy as of the time of the breach and no claim shall be paid under this Policy for losses arising after the breach. The Company may, at its sole discretion, continue coverage provided that (i) it has received written notice of the breach from the Insured, and (ii) the Insured has paid any additional premium as the Company may require and the Company has confirmed in writing that coverage is continued.

(c) It is warranted by the Insured that, after inception of the Policy, the Insured shall at all times use due diligence to maintain each of the Vessels named in the Vessel Schedule in a seaworthy condition.

29. Prior to the sinking of the M/V LIBRA, Chalico did not exercise due diligence in maintaining the vessel in a seaworthy condition by failing, among other things, to inspect and repair wasted hull plating and undertake improper and inadequate patchwork repairs.

30. Prior to the sinking of the M/V LIBRA, Chalico did not provide Safe Harbor with written notice that it had breached its warranty to exercise due diligence to maintain the M/V LIBRA in a seaworthy condition; or pay additional premium related to the same breach of warranty.

31. By virtue of the foregoing premises, the Policy was void at the time the M/V LIBRA took on water and sank on October 17, 2015 and there is no coverage for the CRRC invoices.

### AS AND FOR A SECOND CAUSE OF ACTION

32. Safe Harbor repeats and realleges each and every allegation set forth in paragraphs "1" through "30", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

33. The Policy provides in relevant part:

### CHAPTER 7

### NOTICE

**SECTION 1: NOTICE TO COMPANY**

(a) IN THE EVENT OF ANY OCCURRENCE OR INCIDENT WHICH MAY GIVE RISE TO A CLAIM UNDER THIS POLICY, THE INSURED SHALL GIVE IMMEDIATE NOTICE OF SAID OCCURRENCE OR INCIDENT TO THE COMPANY. The Insured shall not make any admission of liability, either before or after any such Occurrence or incident, without the prior consent of the Company; except that the Insured may, without the prior consent of the Company, provide any reasonable cooperation and assistance requested by a responsible official pursuant to Section 1004(c)(2)(B) of the Act or Section 107(c)(2) of CERCLA.

*\*\*\**

(d) It is essential that the Insured provide the Company with immediate notice of the occurrence of any incident which is potentially covered by this Policy and/or to which the Insured may have liability or as to which the Insured may be required to enter a defense…

(e) LIMITATION DUE TO FAILURE TO NOTIFY: The Company will not have any exposure or liability under this Policy if, for lack of immediate notice an incident is made worse or more

extensive because the Company was unable, for lack of immediate notice, to undertake effective managerial or remedial measures.

34. Policy therefore requires that Chalico provide Safe Harbor with immediate notice of an occurrence which may give rise to a claim.

35. Here, first notice of a subject sinking involving the M/V LIBRA was on or about February 5, 2016 – approximately 3 ½ months following the incident and also well after the alleged response work by CRRC was completed.

36. Accordingly, Chalico failed to provide immediate notice to Safe Harbor as required by the Policy.

37. The delay in providing timely notice to Safe Harbor prejudiced and prohibited Safe Harbor from being able to undertake effective managerial or remedial measures as allowed under the terms of the Policy.

38. By virtue of the foregoing premises, there is no coverage under the Policy for the CRRC invoices.

**AS AND FOR A THIRD CAUSE OF ACTION**

39. Safe Harbor repeats and realleges each and every allegation set forth in paragraphs "1" through "37" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

40. The Policy states in relevant part:

**SECTION 1: OPA**

This Policy shall indemnify the Insured for such amounts as the Insured shall have become legally liable to pay and shall have paid but only in its capacity as Owner or Operator of any Vessel named on the Schedule of Vessels attached to and forming part of this Policy, by reason of:

7

(a)  liability to the United States or to any Claimant imposed under Section 1002 of the Oil Pollution Act of 1990 (Public Law 101-380, as amended), hereinafter the "Act" and costs and expenses incurred and paid by the Insured for Removal of Oil for which liability would have been imposed under Section 1002 of the Act, had the Insured not undertaken such Removal voluntarily.

41.  Chalico has not paid CRRC's invoices to date.

42.  By virtue of the foregoing premises, there is no coverage under the Policy for the CRRC invoices.

## AS AND FOR A FOURTH CAUSE OF ACTION

43.  Safe Harbor repeats and realleges each and every allegation set forth in paragraphs "1" through "41" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

44.  The Policy states in relevant part:

## CHAPTER 8

## COOPERATION

\*\*\*

(d)  Notwithstanding any provision to the contrary, this Policy does not provide coverage for any cost or expense incurred and paid by the Insured without the prior consent of the Company, including investigation and defense costs.

(e)  However, in the event that the Insured acts to mitigate a discharge or threat of a discharge, this exclusion shall not apply to costs or expenses incurred and paid prior to notification being provided to the Company by the Insured for:

(1)  Removal of Oil arising from sudden, accidental and unintentional discharge, spillage, release, leakage or emission for which liability would have been imposed under Section 1002 of the Act had the Insured not undertaken such Removal voluntarily;

\*\*\*

  (3) emergency actions taken to avoid or mitigate liabilities covered under this Policy.

(f) Provided always, however, that the Insured shall give immediate notice to the Company of any Occurrences or incident that may give rise to a claim or potential claim under this Policy.

45. Chalico incurred the CRRC invoices without providing Safe Harbor with timely notice and without Safe Harbor's prior consent.

46. By virtue of the foregoing premises, there is no coverage under the Policy for the CRRC invoices.

## AS AND FOR A FIFTH CAUSE OF ACTION

47. Safe Harbor repeats and realleges each and every allegation set forth in paragraphs "1" through "45" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

48. The Policy provides in relevant part:

## CHAPTER 3

## LEGAL EXPENSE AND DEFENSE

(a) The Company shall have the right and the duty to defend any Claims covered under SECTIONS 1 through 13 of CHAPTER 2 provided the Insured has purchased such Coverage. The Company's duty to defend or duty to continue defending any such Claim, and to pay any Loss, shall cease once the applicable limit of liability as described in the Declaration Page has been exhausted. Defense costs, charges and expenses are included in Loss and reduce the applicable limit of liability that applies and is shown on the Declaration Page and/or Schedule of Vessels.

49. The CRRC invoices are not covered under the Policy.

50. By virtue of the foregoing premises, Safe Harbor has no obligation to defend Chalico in the lawsuit filed by CRRC.

WHEREFORE, plaintiff Safe Harbor Pollution Insurance prays for judgment against defendant 2017 Spirit of Sacramento, LLC as follows:

A. in favor of plaintiff and against defendant on the First Cause of Action for judgment declaring that Safe Harbor Policy No. V-14034-15 was void at the time the M/V LIBRA took on water and sank on October 17, 2015 and therefore there is no coverage for the CRRC's invoices;

B. in favor of plaintiff and against defendant on the Second Cause of Action for judgment declaring that there is no coverage under Safe Harbor Policy No. V-14034-15 for the CRRC invoices by reason that Chalico failed to provide timely notice;

C. in favor of plaintiff and against defendant on the Third Cause of Action for judgment declaring that there is no coverage under Safe Harbor Policy No. V-14034-15 for the CRRC's invoices by reason that defendant has not paid the CRRC's invoices;

D. in favor of plaintiff and against defendant on the Fourth Cause of Action for judgment declaring that there is no coverage under Safe Harbor Policy No. V-14034-15 for the the CRRC invoices by reason that defendant incurred the CRRC invoices without plaintiff's prior consent;

E. in favor of plaintiff and against defendant on the Fifth Cause of Action for judgment declaring that there is no obligation under Safe Harbor Policy No. V-14034-15 for defendant to defend plaintiff in the lawsuit initiated by CRRC; and

F. in favor of plaintiff for such other and further relief that this Court may deem just and proper, together with costs and disbursements of this action.

Dated: New York, New York
    March 31, 2017

            NICOLETTI HORNIG & SWEENEY
            *Attorneys for Plaintiff*
            *SAFE HARBOR POLLUTION INSURANCE*

      By:   s/ Guerric S.D.L. Russell
            Guerric S.D.L. Russell (GR-4845)
            Wall Street Plaza
            88 Pine Street, 7th Floor
            New York, New York 10005-1801
            Tel: (212) 220-3830
            Fax: (212) 220-3780
            E-mail: grussell@nicolettihornig.com
            (FILE NO.:  10100012 GSR/PN)